IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALVIN L. MERRITTE, #R53322,         Plaintiff, v. C/O BRACE, SGT. HARRIS, RODNEY BRAKER, LATOYA HUGHES, ANTHONY WILLS, MS. BUETTNER, MAJOR ROLAND, JANE DOE 1, JOHN DOE 1, JOHN DOE 2 JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JANE DOE 2, J.B. PRITZKER, JANE OR JOHN DOE,         Defendants. | Case No. 25-cv-01954-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Plaintiff Calvin Merritte, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Menard Correctional Center (Menard), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from

such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

**FIRST AMENDED COMPLAINT**

In the First Amended Complaint, Plaintiff describes on going violations of his constitutional rights that began over two years ago on May 8, 2023, and have continue through the filing of the First Amended Complaint on October 24, 2025. (Doc. 5).

Plaintiff asserts that on May 8, 2023, he and Trek Brakes, also an inmate at Menard, were falsely accused of assaulting another inmate in the recreational yard by an unknown correctional officer, Jane Doe 1. (Doc. 5, p. 8). He states that video surveillance footage will show that he and Brakes were not involved in the physical altercation and were playing basketball and lifting weights the entire time they were in the recreational yard. (*Id.*).

Following the incident, Plaintiff was taken to a room within the health care unit, where he was questioned by an internal affairs officer, John Doe 1. When Plaintiff informed John Doe 1 that he did not have any involvement in the assault and refused to lie and provide false information that would implicate Brakes in the assault, John Doe 1 became angry and threatened to charge Plaintiff with assault. (*Id.*).

John Doe 1 left the room, and Plaintiff requested a grievance form and to speak to a lieutenant so that he could report John Doe 1's misconduct. (Doc. 1, p. 8). Correctional Officer Brace came into the room "infuriated about [Plaintiff's] efforts to make a written complaint" about John Doe 1. Brace yelled at Plaintiff, threw Plaintiff to the ground, and "manipulated" Plaintiff's pants down so that his buttocks was exposed. (*Id.*). During the assault, Plaintiff was handcuffed and chained to the ground. He yelled out for help from Sergeant Harris, who was assigned to the health care unit at the time. (*Id.* at p. 9). Brace then inserted his fingers inside Plaintiff's rectum, while cursing and making derogatory comments to Plaintiff. Plaintiff screamed even louder for

Sergeant Harris. (*Id.*).

At some point, Sergeant Harris entered the room and told Brace, "[d]on't do it over here…There's prisoners over here." (Doc. 5, p. 9). Harris instructed Brace to take Plaintiff to North 2 Cell House, the restrictive housing unit. While Brace escorted Plaintiff to North 2, Brace threatened to physically and sexually assault Plaintiff because Plaintiff had attempted to report the conduct of John Doe 1. (*Id.*).

Once they arrived at North 2, Plaintiff attempted to make a Prison Rape Elimination Act (PREA) complaint against Brace to Correctional Officer Rodney Braker. (Doc. 5, p. 9). Braker told Brace to "clean up [his] mess." Brace then punched Plaintiff in the back of the head several times and threatened Plaintiff with more violence if Plaintiff continued to make complaints about Brace and John Doe 1. Brace and Braker put Plaintiff in a holding cage in North 2. (*Id.* at p. 10).

Plaintiff was then taken to another holding cell, where he was seen by Mental Health Professional Buettner. (Doc. 5, p. 10). Buettner conducted a mental health evaluation of Plaintiff. Pursuant to IDOC policy, all inmates reassigned to the restrictive housing unit receive a mental health evaluation. During the evaluation, Plaintiff informed Buettner that he had been sexually and physically assaulted by Brace. Buettner, however, threatened to notify Brace and other correctional officers known for using excessive force to deter Plaintiff from formally reporting the incident so that she would not have document his complaints. Buettner asked Plaintiff, "Are you sure you want to report it because I can't stop them?" Despite the warning, Plaintiff reported the details of John Doe 1 and Brace's misconduct. (*Id.*). Buettner was irritated and suggested that it would be better for Plaintiff to forget about the events of that day. (*Id.* at p. 11).

Because of the mistreatment by John Doe 1 and Brace and the attempt to cover up the mistreatment by Harris, Braker, and Buettner, Plaintiff contemplated suicide. (Doc. 5, p. 11). He

declared a hunger strike and notified Buettner that he would self-harm. Plaintiff was assigned to a psychiatric cell that was unsanitary and uninhabitable. The walls were covered with "fecal bacteria and mace." The "suit and blanket reeked of feces and mace odors." Correctional Officers John Does 2, 3, 4, and 5 did not give Plaintiff his prescribed medications for his allergies, asthma, and hypothyroidism. They also did not allow him hygiene supplies, clothing, bedding, or access to legal materials because he was in a psychiatric cell. The morning after his transfer to the psychiatric cell, Plaintiff asked for cleaning supplies from a correctional officer or to have a janitor clean the cell. His request was denied. (*Id.*).

After speaking to the correctional officer, Mental Health Provider Jane Doe 2 came to Plaintiff's cell and began discussing Plaintiff's private mental health complaints in the presence of the other inmates assigned to the psychiatric and segregation cells in the gallery. (Doc. 5, p. 11-12). Plaintiff asked to speak to Jane Doe 2 in private about his mental health concerns, and she refused. (*Id.* at p. 12). Jane Doe informed Plaintiff, "we do not do on-on-ones here," and asked Plaintiff if he wanted to "come off watch or not?" Plaintiff agreed to be released from the psychiatric cell, rather than discuss his private mental health concerns in the presence of others. (*Id.*).

Sometime between May 8 and 23, 2023, while Plaintiff was in North 2, he and other inmates were sprayed with mace. (Doc. 5, p. 12). Plaintiff complained about being sprayed with mace to Major Roland, and at the same time, Plaintiff showed Roland that he had blood in his underwear from the injury he incurred when Brace inserted his fingers into Plaintiff's rectum. Later that night, Plaintiff received a back-dated investigation report regarding the sexual assault. (*Id.*).

Plaintiff was released from the restrictive housing unit and placed into general population

on May 25, 2023. (Doc. 5, p. 12). From May 25, 2023, through October 17, 2025, Plaintiff repeatedly reported the sexual assault by Brace to Governor Pritzker, Director Hughes, Warden Wills, IDOC's Chief of Operations, and other correctional staff. (*Id.* at p. 12-13). Plaintiff requested a transfer so that he could be kept away from Brace and other "retaliating correctional staff." These individuals "failed to act to rectify the situation." (*Id.* at p. 13).

Plaintiff states that because Governor Pritzker, Director Hughes, Warden Wills, IDOC's Chief of Operations and other correctional staff refused to "rectify the situation," he has been subjected to ongoing mistreatment at Menard. (Doc. 5, p. 13). Since May 25, 2023, to the present, Menard staff have shared and discussed Plaintiff's complaints against Brace and other correctional staff, which has caused ongoing retaliation, including the issuance of false disciplinary tickets and investigation reports, undocumented shakedowns and shower restrictions, exclusion from educational and rehabilitative programs, and cancellation of visitation privileges. (*Id.* at p. 13). Staff have also manipulated other inmates into trying to physically harm Plaintiff by leading inmates to believe that they would receive benefits if Plaintiff was murdered or assaulted. Staff also repeatedly interviewed Plaintiff for various incidents leading inmates to believe that Plaintiff is providing information about other inmates to internal affairs officers, jeopardizing his safety. (*Id.*).

On March 16, 2025, Plaintiff was issued a false disciplinary ticket that alleged that Plaintiff was organizing inmates to oppose correctional staff due to staff misconduct and unconstitutional prison conditions. (Doc. 5, p. 14). The disciplinary ticket had the name of Correctional Officer Krause. Krause, however, apologized to Plaintiff for the ticket and told Plaintiff that he was being targeted by staff because he is "one of the top prisoner's rights activists." Krause advised Plaintiff to "keep his head down if [he] wanted to see [his] release date alive." (*Id.*).

Sometime in October 2025, Plaintiff claims that Lieutenant Lloyd delayed in driving him to hospital in retaliation for Plaintiff complaining about Brace's conduct from 2023 and the ongoing retaliation by correctional staff over the last two years. (Doc. 5, p. 14). On October 22, 2025, Plaintiff reported that he believed he would be denied access to his prescribed medication to treat his kidney stone after he was released from the hospital. (*Id.*). Ms. Hansborough, Director Hughes's assistant, addressed Plaintiff's medical complaints by contacting medical staff about providing him with the medication prescribed by a physician at Memorial Hospital in Chester, Illinois. (*Id.* at p. 15). Hansborough, however, did not address Plaintiff's ongoing complaint of retaliation by staff, which is threatening his life. (*Id.*).

## PRELIMINARY DISMISSAL

The Court dismisses any claims asserted against Major Roland. Plaintiff claims that while he was in the restrictive housing unit, he was sprayed at times with mace until he complained to Major Roland. (Doc. 5, p. 12). Plaintiff also informed Major Roland of his rectal injury caused by Brace. It was only after speaking to Roland that a his "complaints were addressed." (*Id.*). Roland's conduct, as described, did not deprive Plaintiff of a constitutional right. Accordingly, Roland will be dismissed as a defendant to this case.

## DISCUSSION

Based on the allegations in the First Amended Complaint, the Court finds it convenient to divide the claims into the following Counts:

**Count 1:** Eighth/Fourteenth Amendment claim against Jane Doe 1 for falsely accusing Plaintiff of assaulting another inmate on May 8, 2023.

**Count 2:** First Amendment claim against John Doe 1 for retaliating against Plaintiff by threatening Plaintiff with an assault charge if Plaintiff refused to falsely accuse Tyrek Brakes of assaulting another inmate on May 8, 2023.

| | |
|---|---|
| Count 3: | Eighth Amendment claim against Brace for sexually and physically assaulting Plaintiff on May 8, 2023. |
| Count 4: | First Amendment claim against Brace for retaliating against Plaintiff by sexually and physically assaulting him and threatening him with further violence for attempting to complain about the events of May 8, 2023. |
| Count 5: | Eighth Amendment claim against Harris, Braker, and Buettner for failing to intervene in the constitutional violations committed against Plaintiff by John Doe 1 and Brace on May 8, 2023. |
| Count 6: | First Amendment claim against Braker and Buettner for retaliating against Plaintiff by threatening Plaintiff in order to prevent him from complaining about the events of May 8, 2023. |
| Count 7: | Eighth Amendment claim against John Does 2, 3, 4, and 5 for subjecting Plaintiff to unconstitutional conditions of confinement while he was in the psychiatric cell. |
| Count 8: | Eighth Amendment claim against John Does 2, 3, 4, and 5 for deliberate indifference to Plaintiff's serious medical needs by denying him medication while he was in the psychiatric cell. |
| Count 9: | HIPAA/Medical Patient Rights Act/Managed Care Reform and Patient's Rights Act claim against Jane Doe 2 for attempting to discuss Plaintiff's mental health information in front of other inmates. |
| Count 10: | Eighth Amendment claim against Pritzker, Hughes, Wills, and John/Jane Doe Chief of Operations for failing to intervene. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the First Amended Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

Plaintiff claims that Jane Doe 1, who was stationed in the tower at the time the inmate was

---

[1] *Bell Atlantic Corp. v Twombly,* 550 U.S. 544, 570 (2007).

assaulted in the recreational yard on May 8, 2023, falsely claimed that he and Brakes assaulted the inmate. (Doc. 5, p. 8). This allegation does not state a claim. "[T]he Constitution does not create a cause of action for arbitrary and purposeless acts by officials per se, it prohibits the abuse of power that effects a significant deprivation." *Leslie v. Doyle,* 125 F. 3d 1132, 1136 (7th Cir. 1998). "Plaintiff's protection against that kind of arbitrary action would be procedural due process protections, provided a liberty interest was at stake." *Carpenter v. Biermann*, No. 13-CV-3326, 2014 WL 258855, at *2 (C.D. Ill. Jan. 23, 2024) (citing *Leslie,* 125 F. 3d at 1136). There are no allegations linking Jane Doe 1 to a due process violation, or any other constitutional deprivation, following her false accusation. *See Batagiannis v. West Lafayette Community School Corp.,* 454 F. 3d 738, 742 (7 Cir. 2006) ("There is no constitutional right to be free of defamation."). Accordingly, Plaintiff has failed to state a claim against Jane Doe 1, and Count 1 is dismissed.

**Count 2**

Plaintiff claims that John Doe 1 "attempted to manipulate [him] to falsely claim that Brakes committed the assault against the…prisoner." (Doc. 5, p. 8). When Plaintiff refused, John Doe 1 threatened to charge Plaintiff with assault and left the room. (*Id.*).

These allegations are sufficient for Count 1 to proceed against John Doe 1. *See McKinley v. Schoenbeck,* 731 F. App'x 511, 514 (7th Cir. 2018) (holding that the plaintiff "had a right to tell the officers his accounts of events"); *Fairley v. Andrews,* 578 F. 3d 518, 525 (7th Cir. 2009) ("The Constitution prevents governmental actors from forbidding, or penalizing, speech that is protected under the first amendment…threats of penalties also are forbidden").

**Counts 3 and 4**

Plaintiff asserts that in response to him seeking to complain about John Doe 1's conduct, Brace yelled at Plaintiff, threw Plaintiff to the floor while restrained, and inserted his fingers into

Page 8 of 18

Plaintiff's rectum for no penological purpose, but to "humiliate [Plaintiff] and feed his sexual desires." (Doc. 5, p. 8-9). Brace threatened Plaintiff with further physical and sexual violence if Plaintiff continued to complain about John Doe 1 and punched Plaintiff in the back of the head. (*Id.* at p. 9-10). These allegations are sufficient for Counts 3 and 4 to proceed against Brace. *See Fillmore v. Page,* 358 F. 3d 496, 503-504 (7th Cir. 2004) (discussing the elements of an excessive force claim).

### Count 5

Plaintiff alleges Harris "failed to intervene in a way that would assist my efforts to complain about John Doe's #1 retaliatory acts and omissions and prevent Officer Brace from further physically and sexually assaulting me." (Doc. 5, p. 9). He further alleges that Harris, Braker, and Buettner failed "to intervene and report the staff misconduct and crimes" and attempted to cover up evidence of Plaintiff's mistreatment on May 8, 2023. (*Id.* at p. 11).

To the extent Plaintiff is attempting to hold Harris, Braker, and Buettner liable because they did not assist Plaintiff in filing complaints about John Doe 1 and Brace's misconduct and for failing to report the events of May 8, 2023, Count 5 is dismissed. Defendants did not have a constitutional duty to take corrective action once the violations had occurred. *See Soderbeck v. Burnett Cnty,* 752 F.2d 285, 293 (7th Cir. 1985), *cert. denied*, 471 U.S. 1117 (1985) ("[f]ailure to take corrective action cannot in and of itself violate section 1983"); *Burks v. Raemisch,* 555 F.3d 592 (7th Cir. 2009) (stating that "[p]ublic officials do not have a free-floating obligation to put things to rights[.]").

Count 5 will proceed against Harris and Braker to the extent Plaintiff is claiming that they knew about and had a realistic opportunity to prevent or mitigate the retaliatory acts and excessive force used by Brace against Plaintiff on May 8, 2023, but failed to do so. Based on the allegations

in the First Amended Complaint, Harris and Braker were present and witnessed Brace assault and threaten Plaintiff.

### Count 6

Plaintiff asserts that after he attempted to complain about John Doe 1 and Brace to Braker, Braker and Brace placed him in a holding cage in North 2, and Braker told him to "[j]ust cooperate. Don't make this no harder than it has to be, and it'll be over." Plaintiff then agreed not to complain about the conduct of John Doe 1 and Brace response "good boy." (Doc. 5, p. 9-10). Construing Braker's comment as a threat, these allegations are sufficient for Count 6 to proceed against Braker. *See Novoselsky v. Brown,* 822 F. 3d 342, 356 (7th Cir. 2016) ("Retaliatory speech is generally actionable only in situations of threat, coercion, or intimidation that punishment, sanction, or adverse regulatory action will immediately follow.") (internal citations and quotations omitted).

Similarly, Plaintiff claims that Buettner tried to deter Plaintiff from reporting the conduct of John Doe 1 and Brace by threatening to notify Brace and other correctional officers known for their use of excessive force if he reported the events of May 8, 2023, to her. (Doc. 5, p. 10). This is sufficient for Count 6 to proceed against Buettner.

### Count 7

Plaintiff asserts that while he was in the psychiatric cell from May 8-9, 2023, Correctional Officers John Does 2, 3, 4, and 5 did not provide him hygiene supplies, clothing, bedding, or access to legal materials in accordance with "established custom or practice." (Doc. 5, p. 11).

Being denied hygiene supplies, clothing, bedding, or access to legal materials for one day does not violate the Eighth Amendment. *See Gonzalez v. Neal,* No. 25c-cv-552-TLS-AZ, 2025 WL 3002980, at *2 (N.D. Ind. Oct. 27, 2025) (citing *Pegues v. Rogers,* No. 3:07-CV-93, 2007 WL

951896, at *1 (N.D. Ind. Mar. 27, 2007); *Adams v. Pate*, 445 F.2d 105, 108–09 (7th Cir. 1971); *Harris v. Jones,* No. 20-1625, 2021 WL 4950248, at *2 (7th Cir. Oct. 25, 2021); *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir. 1988)). Count 7 is dismissed.

**Count 8**

To plead an Eighth Amendment deliberate indifference claim, a plaintiff must allege: (1) that he suffered from an objectively serious medical condition (objective standard); and (2) that the individual defendant was deliberately indifferent to that condition (subjective standard). *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). A medical condition is objectively serious if "'a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.'" *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference is a high bar. "Neither negligence nor even gross negligence is sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." *Chapman v. Keltner,* 241 F. 3d 842, 845 (7th Cir. 2001) (citing *Salazar v. City of Chi.,* 940 F. 2d 233, 238 (7th Cir. 1991)).

Plaintiff claims that while he was in the psychiatric cell from May 8-9, 2023, Correctional Officers John Does 2, 3, 4, and 5 refused to provide him with medications to treat "life-threatening allergies, asthma, and hypothyroidism." (Doc. 5, p. 11). This general statement is not sufficient for the Court to plausibly infer that each John Doe, who are not medical professionals, knew and disregarded an excessive risk to Plaintiff's health by not allowing Plaintiff to have his prescription

medications with him for the 24 hours he was in the psychiatric cell. Count 8 is dismissed.

**Count 9**

Plaintiff's claim that Jane Doe 2 violated his rights under HIPAA, the Medical Patient Rights Act, and the Managed Care Reform and Patient's Rights Act also fails. These statutes do not provide a private right of action. *See Stewart v. Parkview Hosp.,* 940 F.3d 1013, 1015 (7th Cir. 2019); *Dinerstein v. Google, LLC,* 484 F. Supp. 3d 561, 575 (N.D. Ill. Sept. 4, 2020); 215 ILL. COMP. STAT. ANN. 134/5, 134/105 ("an person who believes that his or her health care plan is in violation of the provisions of this Act may file a complaint with the Department"). Count 9 is dismissed.

**Count 10**

Plaintiff states that since May 8, 2023, he has repeatedly reported Brace's sexual assault and ongoing retaliatory acts by other members of Menard staff that have occurred over the last two years to Governor Pritzker, Director Hughes, Warden Wills, and IDOC's Chief of Operations, but these individuals have refused to "rectify the situation." (Doc. 5, p. 12-13).

"A party can bring a failure-to-intervene claim when an officer had a 'realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights,' but failed to do so. *Young v. Dart,* 2021 WL 3633927, at *5 (N.D. Ill. Aug. 17, 2021) (citing *Miller v. Smith,* 220 F. 3d 491, 495 (7th Cir. 2000)). "A failure-to-intervene claim is not about any run-of-the-mill failure to help. A failure-to-intervene claim is about a failure to step in when another state actor is violating the plaintiff's rights." *Id.*

To the extent Plaintiff is attempting to hold Pritzker, Hughes, Wills, and IDOC's Chief of Operations liable because they were notified but failed to investigate or discipline Correctional Officer Brace following the assault on May 8, 2023, this claim fails. As mentioned, prison officials

are not required to investigate or otherwise correct wrongdoing after it has happened. *See George v. Smith,* 507 F. 3d 605, 609 (7th Cir. 2007) (the proposition that "anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself" is incorrect). Additionally, because these Defendants were informed of the assault after it occurred, they "did not have a realistic opportunity to prevent" it. *Stewardson v. Titus,* 126 F. 4th 1264, 1278 (7th Cir. 2025).

The Court also dismisses Plaintiff's claim to the extent he is asserting that these Defendants are violating his constitutional rights by failing to intervene and prevent ongoing retaliation he has been experiencing for the last two years committed by various staff members at Menard. "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert,* 400 F. 3d 1052, 1064 (7th Cir. 2005). Here, Plaintiff's assertions of retaliation that have been occurring since his release from restrictive housing in 2023 are overly broad and not asserted against any of the named defendants. (*See* Doc. 5, p. 13-14). Because he does not plead an underlying constitutional violation in connection with the alleged inaction by Defendants Pritzker, Hughes, Wills, and IDOC's Chief of Operations, his failure to intervene claim fails. *See Coleman v. City of Peoria, Ill.,* 925 F. 3d 336, 351 (7 Cir. 2019) (finding that without an underlying violation, the defendants were entitled to summary judgment on the plaintiff's derivative claims, including failure to intervene). Accordingly, Count 10 is dismissed.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff has filed a motion for a preliminary injunction and supplement alleging ongoing mistreatment and retaliation by staff at Menard. (Doc. 11, 14). Specifically Plaintiff alleges that (1) on March 16, 2025, Correctional Officer Krause warned Plaintiff that his complaints about staff could lead to Plaintiff being framed for false disciplinary charges and crimes; (2) on

September 23, 2025, Lieutenant Snickers informed another prisoner, who was convicted of murder, that Plaintiff is "romantically associated" with the inmate's girlfriend resulting in Plaintiff being assaulted; (3) on October 22, 2025, he was hospitalized after his food had been poisoned twice; (4) on November 12, 2025, Correctional Officer Garcia falsely announced that Plaintiff is a snitch in the presence of hundreds of inmates; (5) on November 13, 2025, staff tampered with the phone system so that Plaintiff could not place phone calls; and (6) on November 19, 2025, Correctional Officers Shockley and Harriman interfered with Plaintiff seeking medical help for an allergic reaction and planted contraband in Plaintiff's cell. Plaintiff states that the relentless retaliatory acts by staff have resulted in harm, and he will continue to suffer irreparable harm because Defendants have refused to assist him or transfer him to a safer environment. He seeks an injunction enjoining him from being housed at Menard and preventing Defendants and their colleagues from continuing to retaliate against him for his complaints of staff misconduct.

In order to obtain emergency injunctive relief, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Additionally, "a preliminary injunction is appropriate only if it seeks relief of the same character sought in the underlying suit, and deals with a matter presented in that underlying suit." *Daniels v. Dumsdorff,* No. 19-cv-00394, 2019 WL 3322344 at *1 (S.D. Ill. July 24, 2019) (quoting *Hallows v. Madison Cty. Jail,* No. 18-cv-881-JPG, 2018 WL 2118082, at *6 (S.D. Ill. May 8, 2018) (internal citations omitted)). *See also Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir. 1994); *Bird v. Barr,* 19-cv-1581 (KBJ), 2020 WL 4219784, at *2 (D.C.

Cir. July 23, 2020) (noting that a court "only possesses the power to afford preliminary injunctive relief that is related to the claims at issue in the litigation").

After reviewing the First Amended Complaint pursuant to Section 1915A, Plaintiff is proceeding on claims regarding mistreatment by Correctional Officer Brace, Sergeant Harris, Correctional Officer Braker, Mental Health Professional Buettner, and Correctional Officer John Doe 1 that occurred in 2023. He has not stated a viable claim regarding the campaign of retaliation he asserts he has experienced since his release from restrictive housing on May 25, 2023. Thus, his assertions regarding ongoing retaliation are outside the scope of this lawsuit, and he cannot obtain preliminary injunctive relief for these unrelated allegations. If Plaintiff wishes to pursue emergency injunctive relief for these unrelated claims, he should file a separate case under 42 U.S.C. § 1983. The Court states no opinion on the merits of any such claims.

## DISPOSITION

For the reasons set forth above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** is **DISMISSED without prejudice**. **COUNT 2** will proceed against John Doe 1. **COUNT 3** will proceed against Brace. **COUNT 4** will proceed against Brace. **COUNT 5** will proceed in part against Harris and Braker and is **DISMISSED without prejudice** against Buettner. **COUNT 6** will proceed against Braker and Buettner. **COUNTS 7, 8, 9,** and **10** are **DISMISSED without prejudice**. Because there are no surviving claims against Roland, Hughes, John Doe 2, John Doe 3, John Doe 4, John Doe 5, Jane Doe 1, Jane Doe 2, Pritzker, and John/Jane Doe IDOC's Chief Operations Officer, they shall be **TERMINATED** as defendants on the docket. Although there are no surviving claims against Warden Wills, he shall remain a defendant in his official capacity only for the purposes of responding to discovery aimed at identifying the John Doe Defendant.

Because this suit involves allegations of physical injury, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Defendants Brace, Harris, Braker, Buettner, Wills (official capacity only), and John Doe 1 (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to the defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

With the exception of Warden Wills, Defendants are **ORDERED** to file an appropriate responsive pleading to the First Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for

leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in this action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   November 24, 2025**

                                                *s/Stephen P. McGlynn*
                                                **STEPHEN P. MCGLYNN**
                                                **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.